J-A14008-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| JULIE A. HATZEL | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| ALBERT H. HATZEL | |
| Appellant | No. 1278 MDA 2015 |

Appeal from the Order Entered June 25, 2014
In the Court of Common Pleas of Northumberland County
Civil Division at No(s): CV-00-1267

BEFORE:  BOWES, OTT AND PLATT,* JJ.

MEMORANDUM BY BOWES, J.:                    **FILED FEBRUARY 08, 2017**

Albert H. Hatzel ("Husband") appeals the trial court's June 25, 2014 order that directed him to pay Julie A. Hatzel ("Wife") $120,099 pursuant to the equitable distribution order entered concomitant with their 2008 divorce.[1]  We affirm.

Husband and Wife married on December 22, 1974, and separated during August 2000.  The divorce decree was entered on April 9, 2008.

_____

[1] Husband purports to appeal from the June 30, 2015 order that denied his motions for reconsideration of the June 2014 order.  However, since the appeal lies from the operative order and not the order denying reconsideration, we have amended the caption accordingly.

* Retired Senior Judge assigned to the Superior Court.

Meanwhile, following a six-day hearing on equitable distribution, on July 23, 2005, the divorce master entered a report and recommendation dividing the marital estate totaling $1,130,697 by a 57.1% to 42.9% ratio in favor of Wife. The recommendation denied Husband's alimony claim, and awarded Wife $21,350 in counsel fees. To complete the equitable distribution, the master recommended that Wife pay Husband $38,957 to offset the value of marital property that she had retained as part of her 57.1% share.

Both parties filed exceptions to the report and recommendation. Wife asserted that the master failed to include in the marital estate additional property and assets that Husband possessed totaling $312,726.18. She continued that the value of all but approximately $2,000 of those assets should be assessed against Husband's share of the equitable distribution. Thus, Wife contended, "The percentage allocation of 57.1% of the marital assets to Wife and 42.9% of the marital assets to Husband should be carried forward, but the distribution [should be] reallocated based on the additional items of marital property set forth above." Wife's Exceptions to Master's Report and Recommendations, 8/22/07, at 6-7.

In addition, Wife requested, *inter alia*, that the court increase the recommended award of attorneys' fees from $21,350 to $96,588 and add certain litigation expenses totaling $8,723.27. Husband's exceptions challenged the master's findings of fact and conclusions of law relating to the proportionality of the equitable distribution scheme, the award of attorney

fees, and his request for alimony. As it relates to the equitable distribution, he asserted "[t]he master erred . . . in determining that an equitable division of property should [entail] Wife receiving a larger percentage of the marital [estate] than Husband[.]" Husband's Exceptions to Master's Report, 8/9/07, at 2. Indeed, Husband sought an "equitable" scheme "whereby [he] receive[d] 84% of [the] marital property and Wife [received] 16%.") *Id*. at 11.

The trial court agreed with Wife's exception insofar as it adopted her representations as to the value and allocation of the additional marital assets. On March 20, 2008, the trial court entered an order and opinion adopting the master's recommendation as amended by Wife's exception relating to the additional marital property. The court made other adjustments that are not relevant herein and dismissed all of the remaining exceptions, including Husband's challenge to the equitable distribution scheme.

Husband appealed and Wife filed a cross-appeal. Based on an inaccuracy in Wife's concise statement of errors raised on appeal, the trial court's ensuing opinion pursuant to Pa.R.A.P. 1925(a) misstated the proportional division of the equitable distribution as 51.1% to 48.9% in Husband's favor. Despite that imprecision, the trial court reiterated its endorsement of the master's recommendations subject only to the court's prior amendments. Specifically, in rejecting Husband's challenge to the

proportional division of the marital estate, the trial court incorporated its March 20, 2008 opinion and order that adopted the master's recommendation and stated, "The trial court adequately and equitably divided the marital assets in this case and the Husband's issues should be dismissed where the trial court committed no errors of law nor abused its discretion." Rule 1925(a) Opinion, 8/20/08, at 9-10. This Court affirmed the divorce decree based upon the trial court's cogent and well-reasoned analysis. *Hatzel v. Hatzel*, 974 A.2d 1197 (Pa.Super. 2009) (unpublished memorandum filed April 21, 2009).

Five years later, Husband filed a petition for relief seeking to force Wife to transfer title of various automobiles that he was awarded in the 2008 equitable distribution. Husband also sought payment of the $38,957 offset to which he mistakenly believed he was due. Wife contested the validity of the offset in light of the trial court's March 20, 2008 order and she countered with a request that Husband pay approximately $120,000, reflecting her 57.1% share of the adjusted marital estate. Husband ultimately withdrew his demand for the offset. On June 25, 2014, the trial court directed that its March 2008 order was to be strictly enforced, and it ordered that (1) Husband pay Wife $120,099; and (2) Wife transfer title to the vehicles upon receipt of Husband's payment.

Thereafter, the procedural history of this case becomes even more tortuous. Husband initially filed a motion for reconsideration seeking to

reduce the amount of the $120,099 award. The trial court granted reconsideration; however, prior to the resolution of that issue, Husband filed a timely notice of appeal. While the appeal was proceeding without the trial court's knowledge, Husband filed, *inter alia*, an amended motion for reconsideration.[2] On October 23, 2014, the trial court granted the amended reconsideration and entered an order scheduling evidentiary hearings for November 26, 2014.[3] After discovering the appeal, the court directed Husband to discontinue it if he desired the court to address his petitions. Father discontinued the appeal, and after several evidentiary hearings, the Husband trial court entered the June 30, 2015 order denying relief and

_____

[2] Husband also filed two superfluous petitions, which the trial court characterized as "ancillary filings which further muddied the waters regarding the original granting of [r]e-[c]onsideration, and denied "both for a lack of merit and beyond the scope of the [c]ourt's reconsideration." Trial Court order 6/30/15, 1 n.1.

[3] The evidentiary hearing was subsequently continued until December 3, 2014 and then February 25, 2015. While the trial court typically has only 120 days in which to enter a reconsidered decision, where, as here, the court determines that it is necessary to take additional testimony, the rule's time constraints do not apply. *See* Pa.R.C.P. 1930.2(e) ("If the court issues an order for additional testimony, the reconsidered decision need not be rendered within 120 days, and the time for filing a notice of appeal will run from the date the reconsidered decision is rendered."). Instantly, the trial court ordered the evidentiary hearing within the 120-day limit. Hence, the court retained jurisdiction over the matter until it rendered its June 30, 2015 decision.

reinstating the June 25, 2014 order in full force and effect.[4] This appeal followed.

Husband presents five questions for our review:

1.    Did the [trial] Court err in failing to find the Judicial Estoppel Doctrine precluded Wife from asserting Husband is only entitled to 42.9% of the marital estate after Wife successfully asserted before the [trial] Court and Superior Court that a distribution of marital assets of 51.1% to Husband provided him with ample assets to preclude his receipt of alimony?

2.    Did the [trial] Court err in finding Husband owed Wife an additional $120,099.00 where the law of the case clearly indicates a reallocation of marital assets and a distribution scheme which required no payments from Husband or Wife to equalize the marital assets each received?

3.    Did the [trial] Court commit an abuse of discretion in finding that . . . Wife's assertions in her 2008 Superior Court brief "were only a typographical error and were uttered repeatedly without knowledge of the extent of the error" when no evidence was provided to support such a finding?

4.    Did the [trial] Court commit an error of law and/or an abuse of discretion in ordering Husband to pay Wife an additional sum of $120,099.00 after Wife and her counsel accepted and negotiated a check from Husband in the amount of $22,827.35 containing the notation "final non-recourse payment for divorce settlement with X, Julie Hatzel"?

5.  Did the [trial] Court err in failing to find the doctrine of laches precluded Wife's claim for additional cash distribution of $120,099.00 when she delayed six years before asserting this additional claim?

_____

[4] One of the court's two references to the June 25, 2014 order mistakenly identified the order as being entered on January 25, 2014.  It is not contested that the reference relates to the June 25, 2014 order.

- 6 -

Husband's brief at 6-7.

Husband's first issue is waived because he failed to plead the affirmative defense of estoppel pursuant to Pa.R.C.P. 1032 or prior to the trial court's award in Wife's favor. Rule 1032 provides, "all affirmative defenses including but not limited to . . . estoppel . . . shall be pleaded in a responsive pleading under the heading 'New Matter'. As it relates to judicial estoppel, our Supreme Court explained, "As a general rule, a party to an action is estopped from assuming a position inconsistent with his or her assertion in a previous action, if his or her contention was successfully maintained." *In re S.A.J.*, 838 A.2d 616, 620 (Pa. 2003). The High Court iterated, "the purpose of judicial estoppel is 'to uphold the integrity of the courts by 'preventing parties from abusing the judicial process by changing positions as the moment requires.'" *Id*. at 621 (*quoting* *Trowbridge v. Scranton Artificial Limb Company*, 747 A.2d 862, 865 (Pa. 2000)) (select internal quotations omitted).

Instantly, Wife asserted her claim to the additional $120,099 under the equitable distribution scheme in her response to Husband's motion to enforce settlement. The pleading was filed on June 5, 2014. While Husband leveled several defenses to Wife's claim for $120,099, he neglected to assert judicial estoppel in response to that pleading pursuant to Rule 1032, or in any of his three ensuing pleadings responding to Wife's claim for relief. Indeed, even after the trial court entered the order awarding Wife $120,099,

Husband failed to assert judicial estoppel in either of the motions for reconsiderations that he filed in response to that order. When Husband finally asserted this affirmative defense *ad hoc* on January 23, 2015, it was in a procedurally defective motion to dismiss Wife's proposed distribution of assets, a distribution that the trial court awarded six months earlier. As Husband pleaded his proposed estoppel defense improperly, it is waived. **See e.g.**, **March v. Paradise Mut. Ins. Co**., 646 A.2d 1254, 1256 (Pa.Super. 1994) ("It is well-settled that the defense of estoppel is an affirmative defense which must be pleaded as a new matter.").

Since Husband's second and third arguments both are founded upon a misstatement of fact in the Rule 1925(a) opinion that the trial court entered concomitant with Husband's 2008 appeal, we address those claims jointly. Recall that, in explaining its rationale for denying Husband's exception to the master's recommendation relating to Husband's request for alimony, the trial court's Rule 1925(a) opinion incorporated Wife's misstatement that the equitable distribution scheme was 51.1% to 48.9% in favor of Husband. The apparent source of the error was the factual assertion Wife leveled in her Rule 1925(b) statement that she filed in anticipation of her 2008 cross-appeal. In essence, Husband's present arguments seek to elevate the factual inaccuracy into a dispositive legal conclusion that supplants the trial court's March 20, 2008 order, which specifically adopted the master's

recommended equitable distribution scheme awarding Wife 57.1% of the marital estate.

Husband contends that the trial court's award of $120,099 ran afoul of its prior order entered on March 20, 2008, which he asserts was revised, albeit *sub silento*, by the court's subsequent reference to the 51.1%-48.9% distribution that Wife had mistakenly identified in her argument on the alimony issue. Additionally, he challenges the trial court's explanation that the inaccurate reference to the 51.1% to 48.9% division of property was a typographical error that it and Wife repeated unknowingly. Husband complains that the record does not support the trial court's finding that the misstatement was a typographical error. He continues that, to the contrary, the trial court's and Wife's repeated references to the inaccurate split and Wife's six-year delay in demanding the $120,099, were evidence that Wife and the court both understood that the distribution scheme had been changed in Husband's favor by the Court's Rule 1925(a) order. Thus, taken together, Husband argues that: (1) the inaccuracy was not an insignificant typographical error; and (2) the trial court's March 2008 order as encumbered with the latent "revision" is the law of the case. He ultimately concludes that, pursuant to the law of the case, the trial court erred in overlooking the "revised" March 20, 2008 order, and awarding Wife approximately 57.1% of the marital estate. These claims are woefully misguided.

Husband's argument implicates the portion of the law-of-the-case doctrine referred to as the coordinate jurisdiction rule. Stated simply, the coordinate jurisdiction rule "recognize[s] that judges of coordinate jurisdiction sitting in the same case should not overrule each others' decisions" absent exceptional circumstances. **Commonwealth v. Starr**, 664 A.2d 1326, 1331 (Pa. 1995). Husband's reliance upon the doctrine is inapposite.

First, as explained by the High Court, the coordinate rule applies "upon transfer of a matter between trial judges of coordinate jurisdiction[.]" **Id**. Instantly, the case was never transferred between trial judges. Indeed, Husband's argument seeks to challenge one jurist's interpretation of its March 2008 order and the June 25, 2014 order that held that the March 2008 order should be strictly enforced.

Second, and more importantly to the arguments raised herein, Husband's assertion that the trial court "ultimately denied" Wife's exception relevant to this case strains credulity. In reality, as explained *supra*, the trial court **granted** Wife's exception insofar as it adopted her representations as to both the value and **allocation** of the additional marital assets. **See** Opinion and Order, 3/20/08 at unnumbered page 4 ("This Court adopts Wife's [p]roposed findings of facts/conclusions of law and the Distribution of Marital Assets with respect to her Exception Number One" relating to the application of the master's recommended 57.1%-42.9%

distribution scheme to the additional assets). Thereafter, in its Rule 1925(a) opinion, the trial court reiterated its express endorsement of the master's recommended distribution scheme. However, in addressing the unrelated issue of Husband's request for alimony, the court misstated the scheme as 51.1%-49.9%.

The crux of Husband's present assertion is that the court's misstatement of fact effectively revised the patently unequivocal order adopting the master's recommendation. We disagree. The parties are bound by the trial court's March 2008 order and not its subsequent explanation of rationale on an unrelated issue of alimony. At most, the trial court arguably erred in relying upon the inaccurate reference to the distribution scheme in denying Husband's request for alimony. However, that is not the issue in the case at bar. The trial court's March 20, 2008 order clearly adopted the master's recommend 57.1%-42.9% distribution scheme, and this Court affirmed that order on the basis of the trial court's opinion. **Hatzel**, **supra**. No relief is due.

Next, we address Husband's contention that the trial court erred in failing to find that his payment of $22,827.35 in legal fees pursuant to the equitable distribution order constituted a final payment of a disputed sum. The following facts are relevant to our review.

Following our decision affirming the trial court's March 20, 2008 order adopting the master's equitable distribution recommendation, including an

award of counsel fees totaling $21,350, Wife filed a petition for contempt against Husband seeking payment of the court-ordered counsel fees. On December 29, 2009, the trial court entered an order finding Husband in contempt for non-payment and awarding Wife six percent interest on the original amount and an additional $800 in costs that she incurred enforcing the 2008 obligation. On January 15, 2010, Husband presented Wife a check for $22,827.35. The face of the check, which was dated January 8, 2010, displayed a notation that read, "Final Non-recourse payment for Divorce settlement with X, Julie Hatzel." N.T., 12/3/14, Defense Exhibit 1.

Invoking 13 Pa.C.S. § 3311, regarding accord and satisfaction of a disputed amount, Husband asserts that the notation on the check that he presented to Wife in compliance with the contempt order discharged him from any additional claim arising out of the equitable distribution proceedings. He maintains, "If Wife wished to assert [that] the funds provided by Husband were not in full satisfaction of monies owed to her, she was required to tender repayment of the monies she received to Husband or any claim she had would be discharged." Husband's brief at 28. For the following reasons, we disagree.

The relevant statute provides as follows:

(a) . . . If a person against whom a claim is asserted proves that:

(1) that person in good faith tendered an instrument to the claimant as full satisfaction of the claim;

- 12 -

(2) the amount of the claim was unliquidated or subject to a bona fide dispute; and

(3) the claimant obtained payment of the instrument; the following subsections apply.

(b) Proof of conspicuous statement.--Unless subsection (c) applies, the claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim.

13 Pa.C.S. § 3311 (a) and (b).

At the outset, we highlight that Husband's reliance upon § 3311 is misplaced insofar as there was no amount subject to a bona fide dispute when Husband issued the check for $22,827.35. While Husband argues that he proffered the instrument as a global settlement of all equitable distribution claims, the certified record belies this contention. In reality, notwithstanding the notation that was typed on the face of the instrument, Husband proffered the check in satisfaction of the trial court's December 29, 2009 order. Indeed, that check approximated the sum of the $21,350 that the court initially awarded Wife in 2008, roughly seven months interest, and the $800 that Wife incurred to enforce the obligation. Hence, the check was not tendered in reference to a disputed amount, instead, it was proffered in compliance with the express directives of the trial court order.

Moreover, the preprinted receipt slip requesting acknowledgement of the payment indicated that the amount was in reference to the trial court's

Hatzel order, *i.e.*, the December 29, 2009 order finding Husband in contempt. N.T., 12/3/14, at Defendant's Exhibit 2. Tellingly, Gregory Moro, Esquire, Husband's counsel during the relevant period, confirmed that Husband issued the check in response to the December 2009 contempt order. The following exchange occurred during Attorney Moro's cross-examination,

> Q. Attorney Moro, I just have a couple questions for you. When that check was tendered, to the best of your knowledge . . . was that check the full accord satisfaction global settlement of all the issues in the divorce matter?
>
> A. You know, . . . I knew of no other outstanding issues in the case. **It was in settlement of the Court's Order**.
>
> Q. Which Court Order was that?
>
> A. The one that said that Mr. Hatzel [owed] . . . twenty-two thousand and some odd dollars.

N.T. 12/3/14, at 23 (emphases added). Thereafter, Attorney Moro reiterated, "It was in satisfaction of that Order that we tendered the check. . . . [W]e never really discussed the global issues associated with this [case]." *Id*. at 24. In light of the forgoing evidence in the certified record, we reject Husband's assertion that he tendered the $22,827.35 payment as a global settlement of all present and future equitable distribution claims. It is obvious that Husband proffered the amount in compliance with the December 29, 2009 contempt order. Hence, his current assertion, that the

- 14 -

notation of the January 2010 check effectively settled all equitable distribution claims pursuant to § 3311, fails.

Husband's final argument implicates the defense of laches, an equitable bar to the prosecution of stale claims. *See Fulton v. Fulton*, 106 A.3d 127, 131 (Pa.Super. 2014). Laches is "the practical application of the maxim that 'those who sleep on their rights must awaken to the consequence that they have disappeared.'" *Id*. ((quoting *Jackson v. Thomson*, 203 Pa. 622, 53 A. 506, 506 (1902)). In *Fulton* we explained, "Laches bars relief when the complaining party is guilty of want of due diligence in failing to promptly institute the action to the prejudice of another." *Id*. There are two components to the doctrine: "a) a delay arising from petitioner's failure to exercise due diligence; and, b) prejudice to the respondents resulting from the delay." *Id*. Whether the doctrine applies in a particular case is a factual question that is tied to the circumstances at issue therein. *Id*.

Husband asserts that the doctrine of laches precluded Wife from receiving the $120,099 distribution based on the March 2008 equitable distribution because she waited six years before acting on that right. He maintains that her delay was unjustified and that he suffered prejudice as a result of her inaction. Wife counters that Husband cannot demonstrate that he came into this action with "clean hands" insofar as, for six years, he failed to comply with the trial court's March 20, 2008 equitable distribution order,

and then resurrected the issue of equitable distribution by seeking to enforce a right that was created in the March 20, 2008 order.

Without addressing Wife's argument regarding Husband's unclean hands, we reject Husband's laches defense based upon his failure to demonstrate prejudice from the lapse of time. Prejudice occurs "if relevant records have disappeared, if a key witness is now deceased, or cannot be located, or if the defendant changed his position based on the expectation that plaintiff did not intend to pursue the claim." **Fulton**, **supra**, at 134 (citations omitted). Instantly, Husband does not assert any of the foregoing examples of prejudice. Instead, he complains that the size of the file made it difficult for him to determine if he had any defenses to Wife's claim and speculates: 1) Wife believed the misstated distribution scheme was fair; 2) Wife was never owed the additional money; and (3) she did not have an expectation of the additional funds. Husband concludes that, collectively, the size of the certified record and the parties' reliance upon the inaccurate distribution scheme during the prior appeal and cross-appeal "impaired [his] ability to [defend] against the current [claim]." Husband's brief at 29. For the following reasons, no relief is due.

Husband's argument is unavailing. Principally, he failed to assert that, as a result of the delay, evidence disappeared, witnesses became unavailable, or that he changed his position based on the expectation that Wife did not intend to pursue a claim to the additional funds. Thus, he failed

- 16 -

to demonstrate prejudice consistent with our established precedent. *See Fulton*, *supra* at 134-135 (collecting cases).

Furthermore, the circumstances that Husband did proffer as evidence of prejudice are negligible. We observe that, beyond the filings associated with Husband's failure to satisfy Wife's legal fees and his motion to enforce the March 2008 order relating to the transfer of title to several motor vehicles, the delay did not increase the already bloated record in this case. Likewise, while the trial court and the parties relied upon an inaccurate representation of the equitable distribution scheme during the prior appeal in resolving the tangentially related issue concerning Husband's alimony claim, there is no evidence that the misstatement of fact left Husband at a distinct disadvantage in the present action. The crux of Husband's present claim is that Wife lacked any expectation of the $120,099 because she recognized that the court did not award her 57.1% of the marital estate. Wife's delay in invoking the March 2008 order and bringing the mistake to light did not hinder Husband's ability to continue to level his persistent legal position that the money was never owed in the first place. Accordingly, this claim fails.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/8/2017